

FILED
CLERK, U.S. DISTRICT COURT

JUL 17 2008

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JOHN A. MOSSETT, | No.  CV 07-6197-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff filed this action on September 28, 2007, seeking review of the Commissioner's denial of his application for Supplemental Security Income.  The parties filed Consents to proceed before the undersigned Magistrate Judge on October 12, 2007, and October 29, 2007.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 9, 2008, that addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on October 21, 1958. [Administrative Record ("AR") at 56, 94.] He has a twelfth grade education [AR at 77, 430], and past work experience as a janitor. [AR at 72, 81-88, 430.]

On December 30, 2003, plaintiff filed his application for Supplemental Security Income payments, alleging that he has been unable to work since February 15, 2001,[1] due to diabetes, diabetic complications in his eyes and involving his feet, and high blood pressure. [AR at 12, 14, 56-58, 70-79.]   After his application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 39.] A hearing was held on December 9, 2005, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 402-25.] On January 24, 2006, the ALJ determined that plaintiff was not disabled. [AR at 334-36, 337-42.] Thereafter, plaintiff requested review of the ALJ's decision. [AR at 347.]   On June 14, 2006, the Appeals Council vacated the ALJ's decision of January 24, 2006, and remanded the case for further proceedings. [AR at 343, 344-46.] A subsequent hearing was held on October 30, 2006, at which time plaintiff appeared with counsel and again testified on his own behalf. [AR at 426-44.] A vocational expert also testified. [AR at 438-44.] On December 6, 2006, a new ALJ determined that plaintiff was not disabled. [AR at 9-11, 12-19.] When the Appeals Council denied plaintiff's request for review on July 28, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 5-7.]

/

/

/

---

[1]   In his application for Supplemental Security Income payments, plaintiff alleged that he has been unable to work since February 15, 2001.  In the Adult Disability Report, plaintiff indicated that he became unable to work on July 12, 2000. [AR at 71.] Although there appears to be a discrepancy with respect to the alleged onset date of the disability, plaintiff "is only potentially eligible to receive [Supplemental Security Income] payments from the date his application was filed," i.e., from December 30, 2003. [AR at 14.] See 20 C.F.R. §§ 416.330, 416.501.

# III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

# IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

1  claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in

2  substantial gainful activity, the second step requires the Commissioner to determine whether the

3  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

4  to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

5  If the claimant has a "severe" impairment or combination of impairments, the third step requires

6  the Commissioner to determine whether the impairment or combination of impairments meets or

7  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

8  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

9  If the claimant's impairment or combination of impairments does not meet or equal an impairment

10  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

11  sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

12  and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

13  past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

14  case of disability is established. The Commissioner then bears the burden of establishing that the

15  claimant is not disabled, because he can perform other substantial gainful work available in the

16  national economy.   The determination of this issue comprises the fifth and final step in the

17  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d

18  at 1257.

19

20  **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

21         In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

22  gainful activity since the alleged onset date of the disability. [AR at 14, 18.] At step two, the ALJ

23  concluded that plaintiff has the following "severe" impairments: diabetes mellitus, hypertension,

24  and a history of left great toe amputation. [Id.] At step three, the ALJ determined that plaintiff's

25  impairments do not meet or equal any of the  impairments in the Listing. [Id.] The ALJ further

26

27

28

1    found that plaintiff retains the residual functional capacity ("RFC")[2] to "lift up to 20 pounds

2    occasionally, lift and carry up to 10 pounds frequently, walk and stand for 2-4 hours in an 8 hour

3    work day, and no more than occasional bending, kneeling, stooping, crouching, crawling, climbing

4    ladders, working at heights, and walking on uneven ground."[3] [AR at 16, 18.] At step four, the ALJ

5    concluded that plaintiff was not capable of performing his past relevant work.  [Id.]  At step five,

6    the ALJ found, based on the vocational expert's testimony, that there are a significant number of

7    jobs in the national economy that plaintiff is capable of performing.   [AR at 17, 18-19.]

8    Accordingly, the ALJ determined that plaintiff is not disabled.  [AR at 18-19.]

9

10                                            **V.**

11                              **THE ALJ'S DECISION**

12            Plaintiff contends that the ALJ failed to properly evaluate plaintiff's testimony in assessing

13    his residual functional capacity.  Joint Stipulation ("Joint Stip.") at 3.  Specifically, plaintiff argues

14    that the ALJ did not articulate clear and convincing reasons for discounting plaintiff's testimony.

15    Joint Stip. at 3-8, 11-13. As set forth below, the Court agrees with plaintiff and remands the matter

16    for further proceedings.

17            Whenever an ALJ discredits a claimant's testimony, the ALJ must make explicit credibility

18    findings.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Albalos v.

19    Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is

20    insufficient); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept

21    plaintiff's testimony, he must make specific findings rejecting it).  The ALJ can reject a plaintiff's

22    allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing

23

24
        _____

25        [2]    RFC is what a claimant can still do despite existing exertional and nonexertional

26    limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

27        [3]    Based on plaintiff's RFC, the ALJ found that plaintiff is capable of performing "a
      significant range of sedentary to light work" as defined in 20 C.F.R. §§ 404.1567 and 416.967.
28    [AR at 18.]

1  reasons for doing so."[4] Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81

2  F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a plaintiff's

3  testimony as to severity of symptoms when there is medical evidence of an underlying

4  impairment). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918.

5  Absent evidence showing that the plaintiff is malingering, the ALJ must state which testimony is

6  not credible and identify the evidence that undermines the plaintiff's complaints. Id.; see Reddick

7  v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ

8  must identify what testimony is not credible and what evidence undermines the claimant's

9  complaints.") (quoting Lester, 81 F.3d at 834); see also Benton, 331 F.3d at 1041 (ALJ must state

10  "which symptom testimony he found not credible with enough specificity to allow a reviewing court

11  to confirm that the testimony was rejected on permissible grounds and not arbitrarily.").

12  When the record contains medical evidence of underlying impairments that are reasonably

13  likely to cause the alleged symptoms, medical findings are not required to support their alleged

14  severity. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see Light v. Social Security

15  Administration, 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical

16  or diagnostic evidence to support the severity of his pain . . . a finding that the claimant lacks

17  credibility cannot be premised wholly on a lack of medical support for the severity of his pain.");

18  see also Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective

19  physical complaints); Goodenow-Boatsman v. Apfel, 2001 WL 253200, at *3 (N.D. Cal. Feb. 27,

20  2001) ("The same rule applies to other types of subjective symptoms beside pain.").

21

22

_____

23  [4]   The factors to be considered in weighing the credibility of an individual's statements
     include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of
24  the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms;
     (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has
25  taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual
     receives or has received for relief of pain or other symptoms; (6) any measures other than
26  treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his
     or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other
27  factors concerning the individual's functional limitations and restrictions due to pain or other
     factors concerning the individual's functional limitations and restrictions due to pain or other
28  symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c).

1    In her decision, the ALJ determined that plaintiff's allegations regarding his limitations were
2  "not totally credible." [AR at 16, 18.] As the record contains no evidence of malingering by
3  plaintiff,[5] the ALJ was required to justify her credibility determination with clear and convincing
4  reasons.  See Benton, 331 F.3d at 1040.  In evaluating plaintiff's alleged symptoms and
5  limitations, the ALJ found that plaintiff "is not precluded from performing a restricted range of work
6  activities." [AR at 16.] The ALJ noted that "none of [plaintiff's] treating physicians have given any
7  opinion regarding his ability to perform physical activities." [AR at 16.] Thus, the ALJ concluded
8  that the opinion of consultative examiner Dr. Monica Schwarcz regarding plaintiff's functional
9  capacity was not controverted. [AR at 16.] The ALJ also noted that plaintiff denied any medication
10  side effects and testified that his blood sugar levels were under control with medication. [Id.]
11  Additionally, the ALJ indicated that plaintiff testified that he did not take any pain medications. [Id.]
12  In terms of plaintiff's daily activities, the ALJ stated that plaintiff "admitted that he is able to perform
13  grocery shopping, washing the dishes and cleaning the house." [AR at 16.] As discussed below,
14  the Court has considered the ALJ's reasons for discounting plaintiff's subjective testimony, and
15  finds that they are neither clear nor convincing.

16    As one basis for finding plaintiff's allegations regarding the degree of his limitations not
17  credible, the ALJ noted that despite the fact that plaintiff has significant limitations in his ability to
18  ambulate for prolonged periods, none of plaintiff's treating physicians rendered any opinions
19  regarding his functional limitations. [AR at 16.] The ALJ thus concluded that Dr. Schwarcz's
20  opinion that plaintiff "can perform medium exertional activities with limitations in agility is not
21  controverted." [AR at 16.] The ALJ's finding that the treating physicians did not render any
22  opinions regarding plaintiff's functional limitations, and that Dr. Schwarcz's opinion is thus
23  uncontroverted, essentially amounts to a finding that plaintiff's alleged limitations are not supported
24  by objective medical evidence.  While the absence of objective medical evidence to support
25  plaintiff's subjective complaints is a factor that an ALJ can consider in discrediting symptom
26

27
    [5]    The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest
28  plaintiff was doing so.

1  testimony, it cannot be the sole factor. See Bunnell, 947 F.2d at 346-47 (an ALJ may not discredit

2  a claimant's testimony and deny disability benefits solely because the degree of pain alleged by

3  the claimant is not supported by objective medical evidence). "Symptoms can sometimes suggest

4  a greater severity of impairment than is demonstrated by objective and medical findings alone . . .

5  [D]irect medical evidence of the cause and effect relationship between the impairment and the

6  degree of claimant's subjective complaints need not be produced . . . The absence of an objective

7  medical basis which supports the degree of severity of subjective complaints alleged is just one

8  factor to be considered in evaluating the credibility of the testimony and complaints." Luna v.

9  Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (quoting Polaski v. Heckler, 751 F.2d 943, 948 (8th

10  Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S. Ct. 2885, 90 L. Ed.

11  2d 974 (1986)).   Here, although Dr. Schwarcz's opinion lends some support to the ALJ's

12  determination,[6] the lack of objective medical evidence to support plaintiff's subjective testimony

13  cannot alone constitute a valid reason to discredit his allegations.   See 20 C.F.R. §§

14  404.1529(c)(2), 416.929(c)(2) ("[S]tatements about the intensity and persistence of [a claimant's]

15  pain or other symptoms or about the effect [a claimant's] symptoms have on [his or her] ability to

16  work" will not be disregarded "solely because the available objective medical evidence does not

17  /

18  /

19  /

20  /

21  /

22  /

23

24  [6]   While the ALJ relies heavily on Dr. Schwarcz's report to discredit plaintiff's testimony,
25  it is noted that Dr. Schwarcz's report appears to be internally inconsistent. Dr. Schwarcz indicates
   that plaintiff ambulates normally and quickly, and notes that an "[e]valuation of the feet reveals
26  normal architecture without evidence of amputation of the toes." [AR at 142-43.] However, Dr.
   Schwarcz also indicates that plaintiff "had great difficulty with tandem and was unable to toe and
27  heel walk secondary to the amputation of his toe[,]" and further noted that plaintiff "had decreased
   sensation on the soles of his feet to the anterior portion of his toes to pinprick and light touch."
28  [AR at 144.]

1 │ substantiate [a claimant's] statements."); see also SSR 96-7p. The ALJ does not provide any

2 │ reasons that, coupled with the absence of objective medical evidence, are clear and convincing.[7]

3 │      In fact, the ALJ's assertion that Dr. Schwarcz's opinion "is not controverted" is not wholly

4 │ accurate.[8] [AR at 16.] There is evidence in the record to support plaintiff's allegation that he is

5 │ unable work because of foot swelling and pain, and difficulty walking and standing, and that he

6 │ needs to elevate and stay off of his feet. For instance, in a "Post Counseling Instructions" form

7 │ dated July 6, 2005, as well as a "Podiatry Clinic" treatment note from 2005, plaintiff is instructed

8 │ to "stay off feet as much as possible." [AR at 357, 358.] Although it is not clear whether or not a

9 │ "medical source" signed off on the treatment note,[9] and even though the reports of "other

10 │ sources"[10] are afforded no inherent deference under the regulations, the regulations allow an ALJ

11 │ to consider the reports of other medical sources. See 20 C.F.R. §§ 404.1527(d), 416.927(d). The

12 │ ALJ may use evidence from other sources to show the severity of a claimant's impairment and

13 │ how it affects a claimant's ability to work. See 20 C.F.R. §§ 404.1513(d), 416.913(d). Moreover,

14 │ there are treatment notes and emergency department notes indicating that plaintiff has a history

15 │ of left foot pain and swelling, which is consistent with plaintiff's testimony.[11] [AR at 294, 301, 330-

16 │ ───────────────

17 │ [7]    As discussed infra, the other reasons that the ALJ provides in her decision for discounting
18 │ plaintiff's subjective complaints are insufficient.

19 │ [8]    In light of plaintiff's treatment history, the ALJ improperly concluded that no treating
20 │ physician rendered any opinions regarding plaintiff's functional limitations.  The opinion of a
     │ treating physician is entitled to deference despite the contradictory opinion of an examining
21 │ physician that constitutes substantial evidence. See Orn v. Astrue, 495 F.3d 625, 632-33 (9th Cir.
     │ 2007). The ALJ may not reject a treating physician's opinion, even if it is contradicted by another
22 │ physician, without providing specific and legitimate reasons supported by substantial evidence in
     │ the record. Orn, 495 F.3d at 633; see also Lester, 81 F.3d at 830.

23 │ [9]    There is an illegible signature on the "Podiatry Clinic" treatment note, which may be
     │ that of a licensed podiatrist.  A registered nurse signed off on both the "Post Counseling
24 │ Instructions" form and the "Podiatry Clinic" treatment note.

25 │ [10]   "Other  sources"  include nurse practitioners, physicians' assistants, naturopaths,
26 │ chiropractors, audiologists, and therapists. See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

27 │ [11]   The record shows that plaintiff's complaints regarding foot pain and swelling have been
     │ remarkably consistent. The ALJ cites no evidence, nor is there any in the record, that plaintiff has
28 │ a tendency to exaggerate or has given inconsistent statements about his symptoms. See Smolen

32, 356-58, 367, 374-76, 379-81.] The treatment notes also indicate that plaintiff has been treated for diabetes mellitus and diabetic ulcers on his feet for several years. [AR at 202, 227-28, 234, 289-92, 294, 300-05, 309-14, 320-22, 330-33.] In an urgent care visit record dated July 16, 2002, plaintiff was diagnosed with right foot cellulitis.[12] [AR at 130, 133, 137.] The musculoskeletal examination performed during the emergency department visit on January 9, 2004, showed "swelling and redness with drainage from the left great toe." [AR at 375.] Also in January 2004, plaintiff was diagnosed with cellulitis of the left foot. [AR at 376, 380.] On January 12, 2004, plaintiff's left great toe was amputated. [AR at 392-93.] In a "Final Radiology Report" of the right foot dated June 15, 2005, plaintiff was noted as having cellulitis of the right great toe. [AR at 369.] Given plaintiff's treatment history, in combination with the instruction that plaintiff stay off of his feet as much as possible, the ALJ erred in discounting plaintiff's subjective testimony regarding his physical limitations and his inability to work based on lack of supporting evidence.

Next, the ALJ discounted plaintiff's credibility because plaintiff "denied any medication side-effects" and "testified that his blood sugars [were] under control with medication." [AR at 16.] Indeed, the "Disability Report - Field Office," noted that plaintiff did not have any side effects from any of the medications listed therein. [AR at 98.] While the ALJ may consider the lack of side effects from prescribed medications in weighing credibility (see, e.g., Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) ("[a]n ALJ is clearly allowed to consider the ability to perform household chores, the lack of side effects from prescribed medications, and the unexplained absence of treatment for excessive pain," as well as the presentation of conflicting information about drug use)), the absence of medication side effects is immaterial to the ALJ's credibility determination

---

v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996); cf. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ found the plaintiff not credible, in part because she had a "tendency to exaggerate"). Indeed, even Dr. Schwarcz indicated that plaintiff's "reliability is average" [AR at 141], and in a "Consultation Request" dated April 29, 2004, it was noted, without further elaboration, that plaintiff's "statemts [sic] are partially credible." [AR at 180.]

[12]   Cellulitis is a skin infection caused by bacteria. Symptoms of cellulitis include tenderness, pain, swelling, and redness at the site of the infection. http://www.webmd.com/a-to-z-guides/health-topics/default.htm (search "Health A to Z" for "cellulitis;" then select the appropriate hyperlink).

1  in this case. Although plaintiff has the burden of proving that an alleged impairment is disabling

2  (see Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)), plaintiff does not allege impairing side

3  effects from medication to support his claim for disability. Other than the notation in the "Disability

4  Report - Field Office" indicating that plaintiff had no medication side effects, plaintiff offered no

5  testimony regarding side effects from medication. Plaintiff does not allege that he is unable to

6  work due to drowsiness, lack of balance, or some other debilitating effect of medication. Nor did

7  plaintiff report any disabling side effects to any physician. Instead, plaintiff alleged that the need

8  to stay off of his feet to avoid foot pain and swelling prevents him from working. [AR at 409-10,

9  412-14, 421, 431, 436-38.] As discussed, plaintiff has regularly indicated that he has foot pain and

10 swelling, and he has been consistent when describing the limitations the pain imposes. Thus, the

11 lack of medication side effects is irrelevant to the credibility analysis in this instance, and does not

12 constitute a clear and convincing reason to discount plaintiff's subjective testimony, as it has no

13 bearing whatsoever on plaintiff's alleged inability to sustain substantial gainful activity.

14         Additionally, the ALJ asserted that plaintiff's "blood sugars are under control with

15 medication." [AR at 16.] The ALJ's assertion is not an accurate reflection of plaintiff's testimony

16 or the record as a whole. At the December 9, 2005, hearing, when the ALJ asked plaintiff if his

17 feet hurt all the time, plaintiff responded that his feet constantly hurt, and if his "sugar is high" his

18 feet are swollen. [AR at 410.] At the October 30, 2006, hearing, when the ALJ asked plaintiff

19 whether he had problems regulating his blood sugar, plaintiff responded that there were occasions

20 when his blood sugar levels were irregular, specifically, when he had infections. [AR at 432-33.]

21 Plaintiff indicated that he was taking medication to try to regulate his blood sugar level. [See, e.g.,

22 AR at 287, 290, 294.] The record shows that plaintiff was prescribed the following medications:

23 Benazepril, Glucophage and insulin.[13] [AR at 98.] However, despite the prescription medications,

24 plaintiff was noted as having uncontrolled or poorly controlled diabetes on October 30, 2002,

25

26 _____

27         [13]   Benazepril is used to treat high blood pressure (hypertension). Glucophage and insulin
   are used to control high blood sugar. http://my.webmd.com/medical_information/drug_and_herb/
28 default.htm (search "Find A Drug, By Name;" then enter the name of the drug; then select the
   appropriate hyperlink if there are multiple forms of the drug; then follow "Uses" tab).

1   August 30, 2003, January 9, 2004, January 10, 2004, and June 16, 2005. [AR at 242, 311, 360-

2   62, 376, 380.] Although the ALJ may consider the effectiveness of plaintiff's medications in

3   weighing plaintiff's credibility, the ALJ's reliance on plaintiff's testimony regarding his use of blood

4   sugar medication as a reason to discount plaintiff's subjective complaints is insufficient in light of

5   the evidence indicating that plaintiff's diabetes has been poorly controlled and given plaintiff's

6   testimony that his feet swell when his blood sugar level is high, i.e., that his levels are not wholly

7   under control. [AR at 432-33.]

8        Further, in discrediting plaintiff's complaints of pain, the ALJ stated that plaintiff "testified

9   that he takes no pain medications." [AR at 16.] The Court finds the ALJ's characterization of

10   plaintiff's testimony in this regard somewhat narrow. See Reddick, 157 F.3d at 722-23 (noting that

11   the ALJ erred in reaching his conclusion that the plaintiff exaggerated her symptoms because his

12   "paraphrasing of record material [was] not entirely accurate regarding the content or tone of the

13   record"). At the hearing on December 9, 2005, plaintiff testified that standing causes his feet to

14   swell. [AR at 409.] Plaintiff further testified that his feet constantly hurt, but if he stays off his feet

15   and keeps them elevated, the pain is not as severe. [AR at 409, 413.] He testified that wearing

16   shoes (even the shoes that were prescribed by a doctor) and walking cause his feet to swell. [AR

17   at 409-10, 412-13, 421.] Plaintiff also testified that he has to keep his feet elevated for a couple

18   of hours in order for the swelling to go down. [AR at 413-14.] At the hearing on October 30, 2006,

19   plaintiff testified that his feet problems require him to "stay off of [his] feet." [AR at 431.] Plaintiff

20   also testified that he has to elevate his feet to relieve the pain and swelling.[14] [AR at 436-38.]

21   Plaintiff further testified that "there's a lot of pain in [his] feet" and that the last time he went to the

22   doctor he asked the doctor for some pain medication, but instead the doctor gave him a solution

23   in which to soak his feet. [AR at 434.] Moreover, when plaintiff was asked if there were things that

24   he does "to alleviate the pain other than take the medicine[,]" plaintiff responded that he "just

25   stay[s] off of [his] feet]." [AR at 436.] Plaintiff provided both subjective evidence of pain and

26

27       ————————————

28   [14]   Although plaintiff testified that he may be able to be on his feet for three hours a day, he later stated that he cannot think of the last time he was on his feet for three hours. [AR at 435-36.]

1  supporting objective medical evidence of impairments that could reasonably be expected to
2  produce some degree of symptom. See Smolen, 80 F.3d at 1282 ("The claimant need not show
3  that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has
4  alleged; [he] need only show that it could reasonably have caused some degree of the symptom.")
5  (citation omitted). In discounting plaintiff's subjective testimony based on his failure to take pain
6  medication, the ALJ failed to note that plaintiff's foot pain and swelling appeared to be managed
7  with Tylenol [AR at 290], and with alternatives to pain medication, such as soaking solutions and
8  creams, by not wearing shoes and staying of off his feet.[15]  [AR at 363, 412, 431, 434.]  See
9  Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984) (an ALJ may not rely on the claimant's
10 failure to take pain medication where the evidence suggests that the claimant had a good reason
11 for not taking pain medication).  The ALJ ignored evidence which showed that plaintiff was taking
12 the necessary and prescribed steps to reduce his pain.  The ALJ cannot seek to justify negative
13 credibility findings by ignoring competent evidence in the record that suggests an opposite result.
14 See Gallant, 753 F.2d at 1456 (error for an ALJ to ignore competent evidence in the record in
15 order to justify his conclusion); see also Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982)
16 ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite
17 conclusion.") (citation omitted).

18      Finally, the ALJ determined that plaintiff's daily activities negated his allegations regarding
19 his limitations.  Generally speaking, if a claimant has the ability to perform activities "that involve
20 many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ
21 to conclude that the claimant's pain does not prevent [him] from working." See Fair v. Bowen, 885
22 F.2d 597, 603 (9th Cir. 1989).  Engaging in some household chores or activities, however, is not
23 necessarily inconsistent with a finding of disability. See Gallant, 753 F.2d at 1453 (benefits

24

---

25      [15]  On August 30, 2003, plaintiff was also prescribed an antibiotic, i.e., Augmentin, to treat
26 the diabetic foot ulcer on his left great toe. [AR at 289-91, 294, 302.] Augmentin is a penicillin-
   type antibiotic used to treat a wide variety of bacterial infections. http://my.webmd.com/medical_
27 information/drug_and_herb/default.htm (search "Find A Drug, By Name;" then enter the name of
   the drug; then select the appropriate hyperlink if there are multiple forms of the drug; then follow
28 "Uses" tab).

1 awarded on appeal to a claimant experiencing constant leg and back pain, despite the claimant's

2 ability to cook and wash dishes); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)

3 (stating that ability to assist with some household tasks was not determinative of disability) (citing

4 Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981) (disability claimant need not "vegetate in a

5 dark room excluded from all forms of human and social activity")).  Here, in finding plaintiff's

6 allegations regarding his limitations not totally credible, the ALJ cited plaintiff's ability to go grocery

7 shopping, and his ability to wash dishes and clean house. [AR at 16.]  The fact that plaintiff goes

8 to the grocery store every month, washes dishes and cleans house, does not support the ALJ's

9 decision that plaintiff could sustain gainful employment, as the ability to do these limited activities

10 does not necessarily translate into an ability to do activities that are "transferable to a work

11 setting."   See Fair, 885 F.2d at 603 (noting that a claimant is not required to be "utterly

12 incapacitated" in order to be disabled and that "many home activities are not easily transferable

13 to what may be the more grueling environment of the workplace, where it might be impossible to

14 periodically rest or take medication"); see also Smolen, 80 F.3d at 1284 n.7.  The Court is not

15 persuaded that plaintiff's ability to do the stated actions clearly undermines his subjective

16 testimony. See Reddick, 157 F.3d at 722 (". . . claimants should not be penalized for attempting

17 to lead normal lives in the face of their limitations.").  The ALJ made no findings that plaintiff is

18 capable of performing these actions repeatedly or for substantial periods of time without rest, and

19 did not explain how these activities are transferable to the workplace. See Fair, 885 F.2d at 603.

20 Nor did the ALJ provide an explanation as to how plaintiff's ability to perform certain activities is

21 inconsistent with his claimed limitations.[16]  See Reddick, 157 F.3d at 722 (an ability to take part

22 in some household tasks bears on a claimant's credibility only to the extent that the level of activity

23 is in fact inconsistent with the alleged limitations).

24

25 _____

26 [16]   While plaintiff noted in his "Exertional Daily Activities Questionnaire" that he is able to do
certain activities, plaintiff also stated that he needs help moving things around and with cooking
27 because it is hard for him to stand, can only climb three steps to enter the house (and that causes
him pain), does not lift or carry anything, does not drive a car, does not do any outdoor activities,
28 and takes naps often. [AR at 89-91.]

1    "While an ALJ may certainly find testimony not credible and disregard it . . ., [courts] cannot

2    affirm such a determination unless it is supported by specific findings and reasoning." Robbins

3    v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006).  The ALJ erred by failing

4    to provide clear and convincing reasons for discounting plaintiff's subjective testimony.

5

6                                          **VI.**

7                          **REMAND FOR FURTHER PROCEEDINGS**

8            As a general rule, remand is warranted where additional administrative proceedings could

9    remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

10   Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

11   In this case, remand is appropriate to further assess plaintiff's subjective testimony and

12   credibility.[17]  The ALJ is instructed to take whatever further action is deemed appropriate and

13   consistent with this decision.

14           Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

15   (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

16   for further proceedings consistent with this Memorandum Opinion.

17

18   DATED: July 16, 2008

19                                                      PAUL L. ABRAMS
                                                UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25   _____

26   [17]  In weighing plaintiff's credibility, the ALJ on remand should consider all of the relevant
     evidence, including, among other things, the advisement that plaintiff needs to stay off of his feet,
27   his ability to perform some activities and whether those activities are transferrable to the
     workplace, his inability to perform certain activities, and his efforts to alleviate his pain by elevating
28   and staying off of his feet, and by using other methods as advised by his treating sources.

                                          15